**RIVER MANAGEMENT CORPORATION, Plaintiff–Appellee,**

**v.**

**LODGE PROPERTIES INC., and Orient–Express Hotels Inc., formerly Seaco Inc., Defendants–Appellants,**

**v.**

**Allen P. BEBEE, Third–Party Defendant–Appellee.**

**No. 89CA1068.**

Colorado Court of Appeals, Div. V.

May 9, 1991.

As Modified on Denial of Rehearing June 6, 1991.

Berniger, Berg, Rioth & Diver, P.C., Joseph W. Diver, Colorado Springs, for plaintiff-appellee and third-party defendant-appellee.

Holland & Hart, Gordon G. Griener, A. Bruce Jones, Denver, for defendants-appellants.

Opinion by Judge DAVIDSON.

Defendants, Lodge Properties, Inc. (LPI) and its majority shareholder, Orient–Express Hotels, Inc., (OEH) appeal the entry of judgment after a bench trial in favor of the minority shareholder, River Management Corporation (RMC) on its claims of breach of fiduciary duty, and waste and mismanagement of corporate assets. LPI and OEH also appeal the trial court's order granting RMC damages for undervaluation of its stock. We affirm in part, reverse in part, and remand.

The following facts are not in dispute. In 1978, Allen Bebee, the president and controlling shareholder of RMC, was approached by one of the owners of a hotel/condominium complex in Vail, Colorado, known as the "The Lodge at Vail," about purchasing that business. Bebee contacted OEH, then known as SeaCo, Inc., to encourage it to join RMC in purchasing the lodge.

In 1980, OEH, RMC, LPI, and Bebee entered into a stockholders' agreement which contemplated that LPI would acquire the corporate entities which owned the lodge. Pursuant to this agreement, OEH acquired 90% of the shares of LPI stock for $90,000, and RMC acquired the remaining 10% of the shares for $10,000. This agreement also contained a provision which gave OEH the option to purchase all of RMC's stock after January 1985 for its fair market value.

The following January, LPI, a Colorado corporation, acquired the lodge through a stock purchase for $5,657,000. Shortly thereafter, Bebee and other officers and employees of OEH including James Sherwood, its chief executive officer, became directors of LPI.

During the next four years, extensive renovations were performed on the lodge, and LPI's net operating income declined substantially. To cover the operating expenses and pay for the renovations, LPI borrowed large amounts from OEH. As a result, LPI's debt significantly increased.

In March 1985, RMC commenced this action for an involuntary dissolution of LPI pursuant to § 7–8–113, C.R.S. (1986 Repl. Vol. 3A) claiming oppression by OEH, the majority shareholder. Then, two months later, OEH gave notice to RMC of its election to purchase all of RMC's shares of LPI stock and offered $100,000 which RMC rejected. Shortly thereafter, a shareholders meeting was held in which Bebee was removed as an LPI director.

Pursuant to the stockholders' agreement, Merrill Lynch conducted an appraisal of LPI's stock and concluded that because of LPI's high debt, as of May 1985, its stock had only a nominal value. OEH then transferred RMC's shares of LPI stock to itself and tendered a check to RMC for $100. RMC opposed the transfer and never cashed the check.

RMC then amended its complaint to include claims of breach of fiduciary duty, waste and mismanagement, and inadequate compensation for its shares of LPI stock based upon an undervaluation of LPI's assets by Merrill Lynch. LPI counterclaimed against RMC for half of Merrill Lynch's appraisal cost and also brought a third-party claim against Bebee, alleging that he had breached his fiduciary duty to LPI by interfering with LPI's management.

A two-week trial to the court was held at which the parties submitted extensive testimony by expert witnesses. The trial court then made detailed findings of facts and concluded that OEH had failed to provide Merrill Lynch with pertinent information regarding LPI's assets, thereby causing it to undervalue LPI's shares. As a result, the court awarded RMC $444,360 plus interest in damages against OEH.

The court further found that although OEH and LPI had breached their fiduciary duty to RMC by managing LPI in a manner that was inherently unfair to RMC, and by committing waste and mismanagement, dissolution of the corporation was not the appropriate remedy. Rather, the court awarded RMC damages in the amount of $794,970 with interest. The court also found in favor of OEH on its claim against RMC for half of the cost of the appraisal, but denied defendants' third-party claim against Bebee.

This appeal followed.

## I.

Defendants first contend that the trial court erred in awarding damages to RMC because Merrill Lynch undervalued LPI's assets. Specifically, they argue that the stockholders' agreement provides that OEH was only required to pay RMC fair market value of its stock as determined by Merrill Lynch. If an error was made in assessing this value, defendants contend, then RMC's only remedy is against Merrill Lynch. Defendants also contend that the trial court erred in determining the value of LPI's assets. We disagree.

Preliminarily, we note that the stockholders' agreement provides that it shall be

governed by and construed in accordance with the laws of the state of New York. Accordingly, the propriety of OEH's buy-out of RMC's shares is governed by New York law. However, on matters of procedure, the laws of the forum court govern. Therefore, our standard of review on appeal is governed by Colorado law. *See Apache Village, Inc. v. Coleman Co.,* 776 P.2d 1154 (Colo.App.1989).

## A.

■ Directors of a corporation have a fiduciary duty to protect the stockholders' interests and are required to discharge this duty in good faith. *Giblin v. Murphy,* 97 A.D.2d 668, 469 N.Y.S.2d 211 (1983).

In a close corporation, "the relationship between shareholders is akin to that between partners." *In re Dissolution of T.J. Ronan Paint Corp.,* 98 A.D.2d 413, 469 N.Y.S.2d 931 (1984). Thus, majority shareholders and directors in close corporations owe the "highest degree of fidelity, loyalty, trust, faith and confidence" to their shareholders, *Taines v. Gene Barry One Hour Photo Process, Inc.,* 123 Misc.2d 529, 474 N.Y.S.2d 362 (1983), and are required to exercise their utmost good faith and "cannot use their corporate power in bad faith or for their individual advantage." *Levine v. Styleart Press, Inc.,* 31 Misc.2d 106, 217 N.Y.S.2d 688 (1961).

Furthermore, when parties contract with each other, they must also deal with each other fairly and in good faith. *Integrated Sales, Inc. v. Maxell Corporation of America,* 94 A.D.2d 221, 463 N.Y.S.2d 809 (1983).

It is undisputed that prior to May 1985, LPI had acquired an option to purchase certain privately owned land. Subject to approval by the Forest Service, LPI proposed to acquire this land for approximately $1.2 million and then exchange it for two other parcels owned by the Forest Service. One of these parcels, the "Spraddle Creek" parcel, overlooks the town of Vail and the ski slopes, and the other parcel is a 2.5–acre tract immediately adjacent to the lodge. The record shows that by May

1985, LPI had spent almost $500,000 to obtain the option to purchase the private land in order to effectuate this "land swap."

The trial court found that information regarding LPI's interest in the "land swap" was not supplied to Merrill Lynch when it assessed the fair market value of LPI's assets. Thus, this asset was not included in Merrill Lynch's evaluation. Relying on the provision in the shareholders' agreement which provided that OEH would pay fair market value of RMC's share, the trial court determined that defendants were liable for the increase in the stock's fair market value attributable to the "land swap" asset. We agree.

Insofar as defendants contend that they cannot be held liable for the omission of this asset in the report because the trial court did not find that they intentionally failed to provide this information, we disagree.

OEH, as the majority shareholder, had a fiduciary duty to act in good faith to RMC. *Levine v. Styleart Press, Inc., supra.* Implicit in this duty is OEH's responsibility to provide Merrill Lynch all relevant information so that it could fairly assess LPI's stock value.

Contrary to defendant's contention, it is irrelevant whether the misrepresentation to Merrill Lynch regarding LPI's assets was intentional or negligent. OEH is still liable for the fair market value of LPI's shares. *See Fox v. Heatherton,* 281 A.D. 748, 118 N.Y.S.2d 156 (1953).

Furthermore, although there was conflicting evidence regarding whether this information was actually supplied to Merrill Lynch, there is evidence in the record which supports the trial court's finding that it was not. Therefore, we will not disturb this finding on appeal. *See People in Interest of M.S.H.,* 656 P.2d 1294 (Colo. 1983).

### B.

Defendants also contend that the trial court erred in determining the value of the "land swap" asset to LPI, and in determining the effect this asset had upon the fair market value of LPI stock. Essentially, defendants argue (1) that there was insufficient evidence in the record to support the trial court's conclusion that the land swap would actually occur and (2) that the trial court erred in awarding RMC damages based upon the intrinsic value of the land, rather than the effect it had upon LPI's stock value. Again, we disagree.

A local Forest Service representative testified that the Forest Service had signed a letter of intent to proceed with the "swap" and that there was an agreement in principle between LPI and the Forest Service that the swap would occur. In addition, the evidence showed that LPI had spent almost $500,000 in obtaining the option rights to the private land, in hope that the swap would occur. From this evidence, the trial court found that this "opportunity" was a valuable asset to LPI and that there was a high probability the swap would occur. Because these findings have support in the record, we will not disturb them. *See People in Interest of A.J.,* 757 P.2d 1165 (Colo.App.1988).

Furthermore, we also conclude that there is sufficient evidence in the record to support the trial court's award to RMC for the undervaluation of its stock.

The court heard extensive testimony from several expert witnesses regarding the values of the private land, the "land swap," and of the two parcels LPI was attempting to acquire. Although this evidence was conflicting, the trial court accepted the appraisal by plaintiff's expert that the land value of the two parcels LPI was expecting to acquire was $7,639,000. The court then subtracted the amount it would cost LPI to acquire this land, $1.2 million, and arrived at a value of $6,439,000 which it determined was the amount Merrill Lynch had undervalued LPI's assets. The court then subtracted approximately $2 million in excess liabilities as determined by Merrill Lynch, and concluded that LPI's net asset value was $4,443,600. From this figure, the court determined the fair market value of LPI's stock based on this revised net asset value.

Defendants first argue that the trial court erred in accepting RMC's expert's opinion regarding the value of the land swap asset because it did not discount for the fact that the land swap might not occur, nor did it account for numerous other uncertainties regarding the swap such as transactional or development cost. We disagree.

Implicit in the trial court's findings is its conclusion that there was a high probability that the swap would occur and that, thus, no discount for this contingency was necessary. In addition, the record shows that plaintiff's expert did take into account development costs for the properties and also made a deduction in the cost to account for other uncertainties which may occur. Thus, because it is for the trial court to determine the credibility of the witnesses, and the sufficiency and weight of the evidence, we will not disturb this finding which has support in the evidence. *People in the Interest of A.J., supra.*

Defendants also argue that the trial court erred in using the net asset method for evaluating the fair market value of the stock, instead of determining what a willing buyer would have paid for the stock on the open market, as required by the stockholders' agreement.

We agree with defendants that the agreement provides that the value of the stock shall be determined by the value of the shares that may be realized in an open market sale of the shares. The net asset method is, however, a more conservative method of appraising stock value than the method required by the agreement. *See Taines v. Gene Barry One Hour Photo Process, Inc., supra.* Thus, any error which occurred by the use of this method was in favor of defendants.

## II.

Defendants next contend that RMC lacked standing to bring a direct action against LPI and its directors for waste and mismanagement of the corporate assets. Specifically, defendants claim that these types of claims involve injury to the corporation and can only be brought in a shareholders derivative suit. We agree.

In general, claims of waste and mismanagement of corporate assets are claims which allege injury to the corporation and, thus, can only be raised by the corporation itself or by the stockholders in a derivative suit. *Ireland v. Wynkoop*, 36 Colo.App. 205, 539 P.2d 1349 (1975).

An individual stockholder cannot maintain a direct action in his or her own capacity against a director or third party unless such stockholder has sustained an injury which is separate and distinct from that of other shareholders. *Nicholson v. Ash*, 800 P.2d 1352 (Colo.App.1990).

Here, RMC argues that it suffered a distinct injury by the waste and mismanagement of LPI's assets that was not suffered by other shareholders. Specifically, RMC argues that the majority directors undertook massive renovations within a very short time period and this allowed LPI to incur an extensive amount of debt. This waste and mismanagement, RMC contends, deflated LPI's stock value and thus allowed OEH, the majority stockholder, to buy all of RMC's shares at a depressed value. Therefore, the waste and mismanagement caused RMC a distinct harm that was not suffered by any other shareholder.

Although we agree with RMC that the depressed value of LPI's stock resulted in OEH being able to buy out RMC shares at a diminished value, this injury was not caused by the stock's low value, but rather by the buyout provision in the stockholders' agreement. Any impairment in the value of LPI's stock caused by waste or mismanagement affected all of LPI's stock, not just RMC's shares. Therefore, RMC did not suffer a distinct harm.

We are aware, however, that some jurisdictions would recognize RMC's injury as separate and distinct from other stockholders because of its status as the sole minority stockholder. *See Yanow v. Teal Industries*, 178 Conn. 262, 422 A.2d 311 (1979) (sole minority shareholder has personal action against the majority shareholder for looting corporate assets); *Caswell v. Jor-*

*dan,* 184 Ga.App. 755, 362 S.E.2d 769 (1987) (minority shareholder in close corporation may bring direct action against remaining shareholders for looting corporate assets).

The majority of jurisdictions, however, appear to regard claims of waste and mismanagement of corporate assets as claims which must be brought in a derivative suit. *See Bonneau v. Bonneau,* 21 Misc.2d 879, 195 N.Y.S.2d 443 (1959) (sole minority shareholder must bring derivative, not individual, action for corporate misconduct); *Richardson v. Arizona Fuels Corp.,* 614 P.2d 636 (Utah 1980); *Wingate v. Hajdik,* 795 S.W.2d 717 (Tex.1990); *Alario v. Miller,* 354 So.2d 925 (Fla.App.1978). *See also* W. Fletcher, *Cyclopedia of the Law of Private Corporations* §§ 5911 through 5913 (rev. perm. ed. 1984 & 1990 Cum. Supp.)

Furthermore, the policy considerations behind requiring derivative suits is not only to avoid multiplicity of shareholder suits, but also to ensure that any proceeds from the litigation will be treated as corporate assets and thus will be available to satisfy creditors as well. *Nicholson v. Ash, supra.*

Moreover, the general trend in Colorado has been that the types of claims alleged here are pursued in a shareholder's derivative suit, *see Nicholson v. Ash, supra; Ireland v. Wynkoop, supra; Buechner v. Rouse,* 538 P.2d 117 (Colo.App.1975) (not selected for official publication); *Northwestern Development, Inc. v. Dunn,* 29 Colo.App. 364, 483 P.2d 1361 (1971), even when there is only one minority shareholder. *See Clemons v. Wallace,* 42 Colo.App. 17, 592 P.2d 14 (1978); *cf. Box v. Roberts,* 112 Colo. 234, 148 P.2d 810 (1944) (sole shareholder must bring derivative, not personal, suit for fraud). Therefore, we decline to recognize a direct action by RMC for waste or mismanagement of LPI's assets.

### III.

Defendants next contend that the trial court erred in finding that they had breached their fiduciary duty by committing acts of oppression against RMC. We disagree.

Initially, we note that because LPI is a Colorado corporation, its actions are governed by Colorado law. *See Ficor, Inc. v. McHugh,* 639 P.2d 385 (Colo.1982).

■ In Colorado, the director of a corporation and its controlling shareholders owe a fiduciary duty to the remaining stockholders. *See Wright v. Bayly Corp.,* 41 Colo.App. 313, 587 P.2d 799 (1978). This duty requires directors to act with an "extreme measure of candor, unselfishness and good faith" as "[t]heir office is one of trust and they are held to the high standard of duty required of trustees." *Kullgren v. Navy Gas & Supply Co.,* 110 Colo. 454, 135 P.2d 1007 (1943).

■ Furthermore, a breach of such trust entitles shareholders to recover damages caused by the breach. *See Hudson v. American Founders Life Insurance Co.,* 151 Colo. 54, 377 P.2d 391 (1963).

■ The trial court found that LPI and OEH had committed the following acts: (1) during the four years Bebee was a director of LPI, only five board of directors meetings were held, and at no time was any vote taken to approve prospective projects; (2) during these four years, the only shareholders meeting was held in 1985 in order to remove Bebee as a director; (3) many of the major renovation decisions were made by Sherwood without prior authorization from the board of directors; (4) Sherwood never attended any of the board of director meetings, nor would he meet with Bebee to discuss lodge projects; (5) the lodge renovations were elaborate and continually overran budget allowances without producing increased operating income, resulting in costs at least $4 million over budget; (6) to cover operating expenses, OEH made substantial loans to LPI, and then, by filing consolidated tax returns, used LPI's losses for OEH's own benefits. These findings have ample support in the record and will not be disturbed on appeal. *See Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986).

The court then concluded that this "frontloading" of expenditures, together with OEH's subsequent act of buying RMC out at a time when its stock value was depleted, constituted acts which were inherently unfair to RMC. Therefore, the trial court held that OEH had breached its fiduciary duty to RMC, and we agree.

In *United States v. Gates*, 376 F.2d 65 (10th Cir.1967), the court articulated the standard of care for majority stockholders as follows:

"[D]irectors, in their official capacity and as members of [the] dominant group of stockholders, occupy a fiduciary relationship to the holders of minority stockholder interests, and [owe] a duty to exercise their powers as directors with unbending fidelity to their cestuis que trustent and to manage the affairs of the Corporation in a way that will be fair and impartial between ... majority stockholders ... and other holders of minority stock interest, and not to the personal advantage of themselves ... or to the disadvantage or detriment of ... [the minority stockholders]."

Here, the evidence showed that OEH, in its position as majority shareholder, completely controlled the actions of LPI. It is arguable that none of OEH's acts, taken alone, would amount to a breach of its fiduciary duty to act in good faith to RMC. However, when viewed as a whole, OEH's actions in managing LPI had a disproportionately detrimental impact on RMC's interests.

OEH allowed the corporation to incur massive debts, and then took advantage of this financial situation by ousting Bebee from the board of directors and transferring RMC's stock to itself for a mere $100. This clearly prejudiced RMC's interest and resulted in a personal advantage for OEH. Therefore, we agree with the trial court that OEH breached its fiduciary duty to RMC.

However, the trial court awarded a single amount in damages for waste and mismanagement, and breach of fiduciary duty. Accordingly, since RMC lacked standing to recover on the waste and mismanagement claims, the matter must be remanded for a determination of the damages, plus interest, attributable solely to the breach of fiduciary duty.

The judgment is reversed as to the assertion of a direct claim for waste and mismanagement of corporate assets, and because of that reversal, the damages award related to these claims is also reversed. In all other respects the judgment, including the award for undervaluation of LPI's stock, is affirmed, and the cause is remanded for an award of damages plus interest on the claim for breach of fiduciary duty.

JONES and NEY, JJ., concur.