UNITED STATES COURT OF APPEALS
FILED 9/30/96                    TENTH CIRCUIT

ELSIE HILLIARD HILLMAN; C.G.
GREFENSTETTE, trustees of the Henry
Lea Hillman Trust U/A dated 11/18/85
(the "Henry L. Hillman Trust"), trustee for
Juliet Lea Hillman, trustee for Audrey
Hilliard Hillman Trust, trustee for Henry
Lea Hillman, Jr. Trust, trustee for William
Talbott Hillman Trust; EDWARD A.
CRAIG, III, trustees U/A/T dated 8/28/68
for Juliet Lea Hillman (the "Juliet Lea
Hillman Trust"), trustees U/A/T dated
8/28/68 for Audrey Hilliard Hillman (the
"Audrey Hilliard Hillman Trust"), trustees
U/A/T dated 8/28/68 for Henry Lea
Hillman, Jr. (the "Henry Lea Hillman, Jr.
Trust"), trustees U/A/T dated 8/28/68 for
William Talbott Hillman (the "William
Talbott Hillman Trust"); AXTON
CANDY & TOBACCO COMPANY,
INC.; JAMES M. CAPLINGER;
ROBERT C. CARSON TRUST;
THOMAS W. CHISHOLM; DONALD
W. FISHER; LINDA N. FISHER;
CHARLES L. HUGHES; JSM
VENTURES, INC., on behalf of itself and
all others similarly situated; ALFRED A.
KERAN; MED JAMES, INC.; JOSEPH
MIGLIOZZI; LOUISE MIGLIOZZI;
AVIS MILLER; LOIS H. MITCHELL, on
behalf of herself and all others similarly
situated; ERNEST L. PRIEN; ASHER Z.
RABINOWITZ; T.S.M. INVESTMENT
CORPORATION PROFIT SHARING
PLAN; WDM GRAND PARTNERS;
PAUL A. WISCHMEYER,

      Plaintiffs-Appellees,

WILMINGTON SECURITIES, INC.;
HENRY L. HILLMAN; HENRY LEA
HILLMAN TRUST U/A DATED
11/18/85; JULIET LEA HILLMAN

TRUST; AUDREY HILLMAN TRUST;
HENRY LEA HILLMAN, JR. TRUST;
WILLIAM TALBOTT HILLMAN
TRUST,

    Plaintiffs-Counter-Defendants-
Appellees,

    v.

ROY A. WEBLEY,

    Defendant,

LARRY H. WELCH; MAURIE R.
CALDWELL, JR.,

    Defendants-Counter-Claimants,

    and

COOPERS & LYBRAND,

    Defendant-Appellee,

GLEN W. BARNARD,

    Defendant-Counter-Claimant-
Appellant,

    v.

HILLMAN COMPANY; STEVEN N.
HUTCHINSON; H. VAUGHAN
BLAXTER, III; CAROL RILEY;
FRANK A. SAVAGE; CARL
GREFENSTETTE,

    Counter-Defendants-Appellees.

No. 95-1513
(D.C. No. 92-Z-1191)
(D. Colo.)

2

## ORDER AND JUDGMENT[*]

Before EBEL, KELLY, and BRISCOE, Circuit Judges.

This appeal arises out of one of several class action securities cases consolidated for pretrial purposes. Appellant Glen W. Barnard, a defendant in each of the consolidated **cases, appeals** various orders entered in one of those cases, <u>Wilmington Securities et al. v. Welch et al.</u>, civil action No. 92-Z-1191. We affirm.

### I.

### A. Background of AHI

Alert Holdings, Inc., (AHI) is a Delaware corporation with its principal offices in Colorado. At all times relevant to this litigation, AHI was engaged in the business of providing remote electronic monitoring of business and residential security systems throughout the United States. Barnard is a former director and president of AHI.

In the late 1980's, AHI began contacting investors about the possibility of investing in AHI equity securities and loaning funds to AHI or its affiliated entities. One proposed opportunity was for investors to purchase interests in various limited partnerships which were established to purchase alarm monitoring accounts from small, local companies and collect revenues therefrom. AHI allegedly agreed to provide alarm monitoring services for the partnership accounts in return for approximately 20% of each

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of the limited partnerships' total account revenues. In addition to collecting fees for the monitoring services, AHI allegedly received account acquisition and set-up fees, as well as other fees.

To induce investors to purchase the partnership interests, AHI allegedly projected that investors would receive cash distributions of at least a 14-15% annual rate of return. AHI allegedly predicted it would eventually exercise purchase options and acquire the assets of the limited partnerships at a premium of 35% to 50% over what investors would pay for their partnership interests. Further, AHI allegedly predicted it would ultimately become a fully integrated company after exercising these purchase options, and purchasers of AHI securities would achieve even higher rates of return than purchasers of the limited partnership interests.

AHI offerings took place in 1989, 1990, and the first half of 1991. Among the many investors who took part in the offerings were a group of entities, including a company called Wilmington Securities, Inc., owned and/or controlled by Henry Hillman (hereinafter the Hillman Group). Between June 1989 and December 1990, the Hillman Group purchased thousands of shares of AHI stock and, between March 1990 and July 1991, the Hillman Group loaned millions of dollars to AHI and at least one of its related limited partnerships.

Due to their large investment in AHI, the Hillman Group sought and obtained representation on AHI's board of directors, as well as in AHI's management. Specifically, in June 1989, Steven Hutchinson, an individual associated with the Hillman Group, was appointed as a member of AHI's board. In December 1990, Frank "Terry" Savage, another individual associated with the Hillman Group, was appointed as Senior

4

Vice President of AHI. In May 1991, Savage became President and Chief Executive Officer of AHI, replacing Barnard.

During 1990, AHI lost approximately thirty million dollars. In November 1991, AHI notified investors in the limited partnerships that scheduled third-quarter cash distributions would not be made. In December 1991 and January 1992, AHI and its related partnerships filed Chapter 11 bankruptcy petitions in the Southern District of New York.

*B. The securities lawsuits*

A series of lawsuits were subsequently filed in California, Colorado, New York, and Delaware by investors with shares in AHI and/or partnership interests in AHI-related limited partnerships. The suits alleged violations of federal and state securities laws, and named as defendants various individuals, including Barnard, who were involved in the management of AHI and/or AHI-related entities. Also named in several of the suits were Coopers & Lybrand, the accounting firm that assisted AHI in the offerings, and Otten, Johnson, Robinson, Neff & Ragonetti (Otten, Johnson), a law firm that also assisted AHI in the offerings.

According to plaintiffs in the underlying actions, AHI's statements and promises to investors were simply a cover-up for an "elaborate Ponzi scheme." In particular, plaintiffs alleged that, at the time of the offerings, AHI's basic business of monitoring alarm accounts was losing money. AHI offset those losses, plaintiffs alleged, by arranging the sale of limited partnership interests. Plaintiffs further alleged AHI's representations of potential profits, as well as its underlying assumptions and representations about the alarm monitoring business, were untrue and/or lacked any

5

reasonable basis in fact.

In response to at least two of the lawsuits, Barnard filed counter and/or cross-claims, alleging others were responsible for the losses suffered by investors. In particular, Barnard alleged members of the Hillman Group were primarily responsible for the losses. According to Barnard, members of the Hillman Group intentionally precipitated the bankruptcy filings in order to obtain greater control over AHI and its related entities. Barnard sought indemnification from the Hillman Group, as well as damages arising from the alleged individual financial losses he suffered.

The cases were consolidated for pretrial purposes under 28 U.S.C. § 1407. Only two of the consolidated cases are relevant to this appeal. The primary case at issue in this appeal, and the case in which Barnard filed his notice of appeal, is Wilmington Securities, et al. v. Welch, et al., civil action No. 92-Z-1191. The second case relevant to this appeal is AC v. Barnard, Civil No. 94-Z-2076, an action originally filed in California state court and eventually consolidated with the cases in Colorado. These cases will be discussed in order.

### C. The Wilmington Securities case

The Wilmington Securities case was originally filed sometime in 1992 (the exact date is unknown because the record on appeal does not include a copy of the original complaint). Plaintiffs included various individuals and entities related to the Hillman Group. Barnard was one of four individuals named as defendants.

### 1. The partial settlement

In 1993, a settlement between the proposed class of plaintiffs (including plaintiffs from the other consolidated lawsuits) and a number of defendants was achieved in

6

conjunction with a reorganization plan for AHI and its related entities that was eventually approved by the bankruptcy court. The settlement, valued in excess of $50 million, was funded substantially by the Hillman Group, Coopers & Lybrand, and the law firm of Otten, Johnson. Barnard was not among the settling defendants.

Four sections of the settlement agreement are relevant here. Paragraph 65 of the agreement provided that, in the event class plaintiffs obtained a payment from a non-settling defendant and the non-settling defendant successfully maintained a "claim over" against the settling defendants, class plaintiffs would pay the settling defendants the amount of the "claim over," provided such amount did not exceed the payment obtained by class plaintiffs. Paragraph 67 of the agreement provided that, prior to settling their claims with the non-settling defendants, class plaintiffs would obtain a release from the non-settling defendants in favor of the settling defendants. Paragraph 68 of the agreement required the settling defendants to obtain the consent of the class plaintiffs prior to settling any "claim over" with the non-settling defendants. Finally, a section of the agreement entitled "Protection of Settling Defendants Against Claims Over from Non-Settling Defendants and/or Third Parties" provided that the class plaintiffs and the settling defendants would jointly apply to the district court for a bar order prohibiting, among other things, cross-claims made by non-settling defendants against settling defendants.

On June 22, 1993, the court approved the settlement agreement. The settlement agreement, in conjunction with the order of approval, enjoined the non-settling defendants (including Barnard) from filing contribution and/or indemnity claims, except for claims based upon a specific written agreement of indemnity. The court also approved the proportionate bar order proposed by the settling defendants. Under that bar

order, all claims for contribution and/or indemnity that could be asserted by the non-settling defendants (e.g., Barnard) against any of the settling defendants were "extinguished, discharged, satisfied, barred and/or otherwise unenforceable and the future filing of such claims [was] enjoined." Append. 2 at 154.

*2. Barnard's attempt to join additional parties*

On October 30, 1992, Barnard filed a motion to join additional parties as counterclaim defendants. Although the motion was granted on November 23, 1992, Barnard did not obtain service on the additional proposed counterclaim defendants (Hillman Company, Henry Hillman, Steven Hutchinson, Frank Savage, and three other individuals) until mid-1994. Specifically, Barnard officially served Hutchinson on May 16, 1994, Savage on July 30, 1994, and the remaining counterclaim defendants on July 14, 1994. After receiving service from Barnard, these "new" counterclaim defendants moved to dismiss Barnard's counterclaims as untimely. In reviewing the motions to dismiss, the magistrate judge found no good cause for extending the 120-day time period provided by Fed. R. Civ. P. 4(m) for service. Further, the magistrate found Barnard's failure to timely serve the "new" counterclaim defendants was a result of neglect on the part of Barnard and his counsel. Accordingly, on October 19, 1994, the magistrate recommended that the motions to dismiss be granted. On September 15, 1995, the district court issued an order adopting the magistrate's findings and recommendations.

*3. Motions for partial summary judgment*

On October 13, 1994, various members of the Hillman Group who were plaintiffs and counterclaim defendants in the Wilmington Securities case filed a motion for partial summary judgment with respect to three types of individual counterclaims asserted

8

against them by Barnard (i.e., claims arising out of an alleged stock purchase agreement, claims arising out of an alleged promissory note/personal loan, and claims arising out of an alleged severance package). On that same date, the same members filed a separate motion for partial summary judgment in the Wilmington Securities case with respect to the derivative counterclaims asserted against them by Barnard.

On August 30, 1995, the magistrate judge recommended that the motion for partial summary judgment concerning Barnard's derivative claims be granted, and that the motion for partial summary judgment concerning Barnard's individual claims be granted in part and denied in part. On October 24, 1995, the district court adopted the magistrate's recommendation, dismissing all of Barnard's derivative counterclaims and dismissing all but one of Barnard's individual counterclaims (the only counterclaim not dismissed pertained to the Hillman Group's alleged agreement to purchase 50,000 shares of AHI stock from Barnard).

*4. Enforcement of settlement agreement and bar order*

On November 22, 1994, approximately seventeen months after the district court approved the settlement agreement, Barnard filed a motion to set aside the settlement agreement. In his motion, Barnard argued paragraphs 65, 67, and 68 of the settlement agreement were contrary to public policy, and the agreement was therefore void.

On August 31, 1995, the magistrate judge denied Barnard's motion to set aside the settlement agreement. In so doing, the magistrate emphasized that Barnard could not rely upon Fed. R. Civ. P. 60(b)(6) "to relieve [him] of [his] voluntary decision not to enter into the settlement agreement and not to appeal the settlement agreement." Append. 5 at 1296.

9

*5. Dismissal of remaining claims*

On October 30, 1995, Barnard and the Hillman Group filed a joint stipulation of dismissal and a joint motion for certification of issues for review on appeal. In the joint stipulation of dismissal, both sides agreed to dismiss without prejudice their remaining claims pending resolution of Barnard's proposed appeal.[1] Both the stipulation and the motion were granted by the district court on November 1, 1995. On November 30, 1995, Barnard filed his notice of appeal.

*D. The AC case*

AC, a California limited partnership, filed suit against Barnard and his wife in California state court on February 5, 1993. On December 6, 1993, Barnard filed a first amended cross-complaint in the AC case, asserting cross-claims against a number of cross-claim defendants, including each of the counterclaim defendants he had attempted to include in the Wilmington Securities case (i.e., Hillman Company, Henry Hillman, Steven Hutchinson, Frank Savage, etc.). Presumably, Barnard timely served each of these cross-claim defendants.

On January 7, 1994, the Hillman Group and Coopers & Lybrand filed a joint motion to enforce the bar order issued by the district court, asserting the cross-claims filed against them by Barnard in the AC case violated the terms of the bar order previously entered in connection with the approval of the settlement agreement. More specifically, they argued all cross-claims asserted against them by Barnard in AC were in fact claims

---

[1] The stipulation of dismissal provides that, should Barnard be successful on appeal, the parties can refile their remaining claims. Should all of Barnard's claims on appeal be rejected, however, the stipulation provides that the parties' remaining claims will be dismissed with prejudice.

for indemnification or contribution. The motion was subsequently joined by Frank Savage.

On March 17, 1994, the district court issued an order granting in part and denying in part the motion to enforce bar order. The court found the first two causes of action asserted in Barnard's cross-complaint were claims for indemnification and thus fell within the scope of the bar order. As for the remaining twelve cross-claims, the court was unable to determine whether they were "independent claims or disguised requests for indemnification and contribution." Append. 2 at 184.

On April 11, 1994, Barnard filed a motion asking the district court to assert jurisdiction over the claims in the AC lawsuit. On June 10, 1994, the magistrate judge recommended that the claims in AC be transferred to Colorado and consolidated with the multi-district litigation for coordinated pretrial and discovery proceedings. On August 16, 1994, the district court adopted the magistrate's findings and recommendations. Subsequently, AC filed a motion to dismiss its claims, which was granted by the district court on September 15, 1995. Although the court's order is not entirely clear, it appears the court intended that Barnard's cross-claims in AC be dismissed as well.

*E. The AHI bankruptcy proceedings*

As a final matter, it is necessary to briefly review the procedural history of the AHI bankruptcy proceedings. AHI filed its Chapter 11 bankruptcy petition on December 11, 1991. AHI filed its second amended plan of reorganization on May 6, 1993. Contained in the second amended plan of reorganization was AHI's broad release of all claims and potential claims against Wilmington. On June 24, 1993, the bankruptcy court confirmed AHI's Chapter 11 reorganization plan, finding the AHI bankruptcy petition had been filed

11

in good faith. By confirming the reorganization plan, the bankruptcy court also affirmed the portions of the plan in which AHI released the Hillman Group from any and all liability, thereby eliminating any and all potential derivative causes of action that could be filed against the Hillman Group for harm done to AHI. It is uncontroverted that Barnard did not appeal the confirmation order.

## II.

1.  *Did the district court err in granting summary judgment in favor of the Hillman Group on two of Barnard's individual counterclaims?*

As outlined above, Barnard filed three individual counterclaims against the Hillman Group in the <u>Wilmington Securities</u> case. In the first individual counterclaim, Barnard alleged the Hillman Group breached a contract to purchase 50,000 shares of AHI common stock from him. In the second, Barnard alleged the Hillman Group fraudulently induced him to loan $500,000 to AHI in order to deplete his personal financial resources. In his third individual counterclaim, Barnard alleged the Hillman Group fraudulently induced him to resign from AHI and also caused AHI to breach a severance agreement with him. Barnard alleged these three instances of the Hillman Group's conduct were "part of a tortious conspiracy to squeeze [him] out of [AHI], take over [AHI] and destroy [his] financial interest in [AHI]." Append. 4 at 912-13.

In response to these counterclaims, the Hillman Group filed a motion for partial summary judgment. On October 24, 1995, the district court granted summary judgment in favor of the Hillman Group with respect to plaintiff's second and third individual counterclaims. The only individual counterclaim not dismissed was the first one (i.e., the Hillman Group's alleged agreement to purchase 50,000 shares of AHI stock from

12

Barnard).

On appeal, Barnard contends the district court erred in granting summary judgment in favor of the Hillman Group on his second and third individual counterclaims. In support of this contention, Barnard asserts the affidavit he submitted in opposition to the Hillman Group's motion was specific and created genuine issues of material fact which were sufficient to preclude summary judgment. Barnard also claims the court did not properly review the Hillman Group's motion, but instead simply relied upon the magistrate judge's recommendation.

We review de novo the district court's grant of summary judgment, applying the same standard used by the district court. Panis v. Mission Hills Bank, 60 F.3d 1486, 1489-90 (10th Cir.1995), cert. denied, 116 S.Ct. 1045 (1996). In so doing, we must view the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Deepwater Investments, Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). We will uphold summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

After carefully reviewing the record on appeal, we conclude Barnard failed to present sufficient evidence to create a genuine issue of material fact with respect to his second and third individual counterclaims. The primary piece of evidence relied upon by Barnard was his own affidavit, the majority of which contains little more than conclusory allegations of wrongdoing on the part of the Hillman defendants. With respect to the counterclaims at issue, the affidavit contains few, if any, facts that would be admissible at trial and that are supportive of Barnard's allegations of wrongdoing. See Hall v. Belmon,

13

935 F.2d 1106, 1111 (10th Cir.1991) (to create factual dispute precluding summary judgment, "the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient"). Accordingly, we affirm the district court's grant of summary judgment with respect to the second and third individual counterclaims.

2. *Did the cumulative effect of the district court's orders deprive Barnard of his right to due process?*

Barnard contends the district court violated his procedural due process rights by improperly denying certain of his discovery requests and making other erroneous rulings. Specifically, Barnard asserts the court erred in (1) refusing to order the Hillman Group to produce deposition testimony taken in the AHI and AHI-related bankruptcy proceedings; (2) ruling, allegedly sua sponte, that his cross-claims in the AC case were prohibited by the bar order; and (3) ruling that service of certain members of the Hillman Group in the AC case was not sufficient to constitute service of those same entities/individuals in the Wilmington Securities case. According to Barnard, "[t]he cumulative effect of the foregoing procedural and due process errors is to deny [him] the right to a trial on the merits of his claims against third party tort feasors." Appellant's br. at 34.

a. *Refusing to order production of bankruptcy deposition transcripts*

Generally speaking, "discovery rulings are within the broad discretion of the trial court" and will not be disturbed "'unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" Cole v. Ruidoso Mun. Schools, 43 F.3d 1373, 1386 (10th Cir. 1994) (quoting United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir. 1986)). Here, the magistrate judge rejected Barnard's request for production of certain

14

deposition transcripts taken in the AHI bankruptcy case because the transcripts were "subject to confidentiality agreements and protective orders entered by the bankruptcy court," and "production of these transcripts would violate the bankruptcy court's orders." Append. 5 at 1299. Although Barnard contends the magistrate erred in so ruling, we conclude otherwise. Barnard has failed to dispute the fact that, as alleged by appellees and as found by the magistrate, many of the deposition transcripts were placed under seal by the bankruptcy court and could therefore not be produced without approval of the bankruptcy court. Moreover, as noted by appellees, Barnard could have either sought release of the transcripts from the bankruptcy court or separately deposed the witnesses in whose testimony he was interested.

> b. *Holding that Barnard's claims are prohibited by the bar order*

Barnard alleges the district court erred when it issued a sua sponte order in 1995 holding his cross-claims in the <u>AC</u> case were prohibited by the bar order. Barnard also appears to be asserting that, because he was not a party to the settlement agreement entered into between the class plaintiffs and most of the other defendants, certain provisions of that agreement should not be enforced because they will impede his ability to pursue or settle his cross-claims in <u>AC</u>.

We conclude that we are without jurisdiction to consider this issue. Barnard is attempting to appeal an order entered by the district court in the <u>AC</u> case when, in fact, the instant appeal arises solely out of the <u>Wilmington Securities</u> case. Apparently, Barnard believes consolidation of the two cases for pretrial purposes allows him to file a single appeal and obtain review of orders issued in both cases. However, he has cited no cases in support of this proposition and we have found none that would allow such a

15

result.  In fact, as we discuss in greater detail below, consolidation of cases pursuant to 28 U.S.C. § 1407 is merely intended to streamline pretrial activities and does not allow litigants to overlook rules that otherwise apply to their cases.[2]  Cf. Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933) (pre-Federal Rules case holding that "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another"); In re Food Lion, 73 F.3d 528, 533 (4th Cir. 1996) (multi district case in which separate appeals were filed and subsequently consolidated for purposes of appeal; court noted a consolidated appeal "is the best means of achieving the goals of efficient and uniform adjudication of numerous actions"); In re Regents of University of California, 964 F.2d 1128, 1134 (Fed. Cir. 1992) (holding multi district panel's order consolidating cases "simply coordinates . . . pretrial procedures" in the interest of efficiency); FMC Corp. v. Glouster Engineering Co., 830 F.2d 770, 771 (7th Cir. 1987) (noting "it is only for the pretrial stage of litigation that a transfer under section 1407 . . . is allowed"), cert. dismissed, 486 U.S. 1063 (1988).

In passing, we note that Barnard has, in fact, filed a separate appeal in the AC case.  Although Barnard's counsel stated at oral argument that no such appeal had been filed, and no reference to a separate appeal was made in Barnard's appellate pleadings, counsel for Coopers & Lybrand indicated at oral argument that such an appeal had been

---

[2]  Because the cases at issue here were not consolidated for purposes of trial, we reach no conclusion whether, under such circumstances, consolidated cases could be treated as a single case for purposes of appeal.  See generally Trinity Broadcasting Corp. v. Eller, 827 F.2d 673, 675 (10th Cir. 1987) (holding that when two cases have been consolidated for trial, judgment in one is not appealable while the other is still pending), cert. denied, 487 U.S. 1223 (1988).

16

filed and was pending. We have determined that Barnard did file a separate appeal in the AC case, No. 96-1300, which is currently pending in this court. Based upon this information, we conclude Barnard was aware of his need to file a separate appeal challenging orders issued in the AC case.

As for Barnard's challenge to the settlement agreement, we conclude it is untimely and without merit. Under Fed. R. App. P. 4(a)(1), a non-settling defendant generally has thirty days in which to appeal a district court's approval of a settlement agreement. See TBG v. Bendis, 36 F.3d 916, 920 (10th Cir. 1994). Here, the district court approved the settlement agreement on June 22, 1993. However, Barnard did not attempt to appeal the order of approval. Instead, Barnard waited approximately seventeen months and then filed a motion pursuant to Fed. R. Civ. P. 60(b)(4), (5), and (6) to set aside the agreement. In rejecting Barnard's motion, the magistrate judge held that Barnard had "failed to present 'extraordinary circumstances' that would justify relief from the operation of the settlement" under Rule 60(b). Append. 5 at 1296. Further, the magistrate held Rule 60(b) could not be used to relieve Barnard of his "voluntary decision not to enter into the settlement agreement and not to appeal the settlement agreement." Id. Having carefully reviewed the record on appeal, as well as Barnard's arguments, we find no abuse of discretion on the part of the district court in denying Barnard's motion. See Stubblefield v. Windsor Capital Group, 74 F.3d 990, 994 (10th Cir. 1996) (holding denial of Rule 60(b) motion is reviewed for abuse of discretion; also noting relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances).

>    c.    *Where two or more cases have been consolidated for pretrial*
>          *activities by the panel on multi-district litigation, does service*
>          *of a defendant in one case constitute service of the same*
>          *defendant in another consolidated case?*

17

As previously noted, Barnard timely served the cross-claim defendants in the AC case, but did not timely serve the counterclaim defendants in the Wilmington Securities case (the cross-claim defendants in the AC case were the same individuals/entities as the counterclaim defendants in the Wilmington Securities case). Barnard contends since both cases were consolidated for pretrial purposes, the timely service of process in the AC case should be sufficient to satisfy the service requirements in the Wilmington Securities case. Accordingly, Barnard contends, the district court should not have granted the counterclaim defendants' motions to dismiss in the Wilmington Securities case.

We reject Barnard's argument. Barnard has cited no cases, and we have found none, holding that service of process in one action is sufficient to constitute service of process on the same defendant in a separate action, even if the two actions are consolidated for pretrial purposes. Although Barnard relies heavily on the fact that the AC and Wilmington Securities cases were both part of the same multi-district litigation, it is clear the purpose of such consolidation is to expedite and streamline the discovery process in those instances where cases share common, yet complex, factual backgrounds. See 28 U.S.C. § 1407 (authorizing transfer of civil actions "for coordinated or consolidated pretrial proceedings."). Notably, under the rule of procedure authorizing such consolidations, it is expressly stated that such actions are to be returned to their transferring districts for trial. 28 U.S.C. § 1407 ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district court from which it was transferred unless it shall have been previously terminated."). Taken together, these factors indicate cases consolidated pursuant to § 1407 do not "become one" for purposes of personal jurisdiction. See Johnson, 289 U.S.

18

at 497 (holding consolidation does not "make those who are parties in one suit parties in another"); In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-II, 953 F.2d 162, 165 (4th Cir. 1992) ("The authority for consolidating cases on the order of the judicial panel on multi-district litigation . . . is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred.").

### d.      Summary

Because we find no merit to any of the above-alleged errors, we find it unnecessary to address Barnard's contention that the cumulative effect of the above-alleged errors violated his due process rights.

### 3.      Did the district court err in characterizing certain of Barnard's claims as derivative, rather than individual, and by dismissing those counterclaims?

As previously noted, the Hillman Group filed a motion for partial summary judgment with respect to certain of Barnard's counterclaims (i.e., counterclaims 1-5) that appeared to be derivative rather than individual. On August 30, 1995, the magistrate judge recommended that the motion be granted in its entirety. The magistrate noted that, under both Delaware and Colorado law, a shareholder could not maintain an individual lawsuit for alleged wrongs against a corporation. Further, the magistrate reviewed the substance of the challenged counterclaims and concluded they arose out of a wrong allegedly perpetrated by the Hillman Group against AHI (i.e., orchestrating a takeover scheme). Accordingly, the magistrate judge concluded the allegations did not impart Barnard "with individual claims or damages which are separate and distinct from the general class of AHI shareholders." Append. 5 at 1286. Further, the magistrate concluded that, even if the claims could be classified as individual, Barnard had failed to

19

provide any factual support for his allegations of a "takeover plan" on the part of the Hillman Group. Id. at 1287. On October 24, 1995, the district court adopted the magistrate's recommendations concerning the Hillman Group's motion for partial summary judgment.

On appeal, Barnard contends the magistrate judge and the district court erred in characterizing these counterclaims as derivative. Instead, Barnard contends, his counterclaims are individual. In support of this assertion, Barnard alleges he

> has alleged harms unique to himself: inability to participate in class recovery, loss of business employment opportunities because of interference with his relationship with [AHI], fraud regarding the [Hillman Group's] willingness or ability to finance on-going acquisitions (which would have translated into continued employment for [him]) and fraud to disproportionately devalue his stock.

Appellant's br. at 36.

As an initial matter, we conclude Colorado law is applicable to the relationships of AHI, the Hillman Group, and Barnard. Although AHI is a Delaware corporation, it is uncontroverted that its principal place of business was in Colorado. Accordingly, under Colorado choice of law principles, Colorado law governs "the rights and duties between the corporation's directors and shareholders and the corporation's creditors." Ficor v. McHugh, 639 P.2d 385, 391 (Colo. 1982) (en banc).

Under Colorado law, "[a]n individual stockholder cannot maintain a direct action in his or her own capacity against a director or third party unless such stockholder has sustained an injury which is separate and distinct from that of other shareholders." River Management Corp. v. Lodge Properties, 829 P.2d 398, 403 (Colo. App. 1991). Generally speaking, "claims of waste and mismanagement of corporate assets are claims which allege injury to the corporation and, thus, can only be raised by the corporation itself or by

20

the stockholders in a derivative suit." Id.

We now turn to the allegations set forth in counterclaims at issue. Counterclaims 1-5 allege members of the Hillman Group committed fraud, breached their fiduciary duties, negligently misrepresented facts, were negligent in their management of AHI, and engaged in a civil conspiracy to obtain control of AHI. Unfortunately, the allegations of wrongdoing, as well as the allegations concerning how Barnard was damaged thereby, are extremely vague and conclusory. Nevertheless, it appears the essence of these claims is that the Hillman Group's alleged misconduct directly injured AHI, thereby indirectly injuring Barnard by diminishing the value of his AHI stock. Barnard's alleged injury, i.e., his loss of stock value, appears to be no different than that of any other AHI shareholder. Viewed in this manner, we conclude the counterclaims are, in fact, derivative. See River Management, 829 P.2d at 403.

Even assuming, for purposes of argument, that the counterclaims are individual, we conclude Barnard failed to present sufficient evidence to survive summary judgment. In his response to the motion for partial summary judgment, Barnard submitted various items of evidence, including his own affidavit. None of this evidence, however, was sufficient to allow a reasonable trier of fact to find in favor of Barnard on his "takeover" theory. In fact, the only piece of evidence which actually touches on the "takeover" theory is Barnard's affidavit. As previously noted, that affidavit is vague and conclusory and wholly insufficient to create genuine issues of material fact.

For these reasons, we conclude the district court did not err in granting summary judgment with respect to Barnard's derivative counterclaims.

   4.    *Did Barnard preserve his right to sue third-party wrongdoers?*

21

As an apparent alternative argument, Barnard asserts that, even if several of his counterclaims are characterized as derivative, he should be able to assert them because, during the course of the underlying bankruptcy proceedings, the Hillman Group stipulated, and the bankruptcy court agreed, that he could pursue his claims against the Hillman Group.

This argument is without merit. Barnard initially objected to AHI's proposed plan of reorganization filed with the bankruptcy court. He later withdrew this objection under the stipulation with the Hillman Group that he could continue to pursue his claims against them in another forum. For Barnard to now assert that this stipulation affords him the opportunity to pursue derivative claims otherwise unavailable to him is without merit. The general terms of the stipulation do not purport to, nor could they, provide any such result. In any event, as part of the reorganization plan, AHI released the Hillman Group from any liability for wrongdoing. Thus, any potential derivative claims were "wiped away" as a result of the bankruptcy court's approval of the reorganization plan and are no longer available.

5.      *Will Barnard's due process rights be violated if he is not allowed to pursue his derivative counterclaims?*

In his final issue on appeal, Barnard contends that, as a defendant equity holder who was excluded from the class of plaintiffs, he must be permitted to sue the wrongdoers directly or else he will be deprived of his property rights without due process of law.

This argument is meritless. To the extent that any of Barnard's counterclaims are derivative, they belong to the corporation, not to him. A plaintiff stockholder in a derivative action is "at best the nominal plaintiff." Ross v. Bernhard, 396 U.S. 531, 538

22

(1970).  Instead, it is the corporation that is the real party in interest.  <u>See</u> <u>Koster v.</u> <u>Lumbermens Mut. Casualty Co.</u>, 330 U.S. 518, 522-23 (1947).  Accordingly, it is apparent that Barnard has no "property right" in his derivative counterclaims, and the dismissal of those counterclaims has therefore not violated his due process rights.

III.

The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge