Sam O. **COLT and Richard Winternitz, as shareholders of Mt. Princeton Trout Club, Inc., Plaintiffs–Appellees,**

v.

**MT. PRINCETON TROUT CLUB, INC., a Colorado corporation; Lisa Riegel; Robert F. Delaney; and Forest L. Geisinger, Defendants–Appellants.**

No. 01CA2287.

Colorado Court of Appeals,
Div. I.

Feb. 27, 2003.

Certiorari Denied Nov. 3, 2003.*

* Chief Justice MULLARKEY would grant as to the following issue:
  Whether the court of appeals erred in ruling that corporate conduct that affects all shareholders in a similar manner is an "oppressive" act that justifies dissolution of the corporation.

John M. Cogswell Law Office, John M. Cogswell, Buena Vista, Colorado, for Plaintiffs–Appellees.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado, for Defendant–Appellant Mt. Princeton Trout Club, Inc.

James C. Duve, P.C., James C. Duve, Colorado Springs, Colorado, for Defendants–Appellants Lisa Riegel, Robert F. Delaney, and Forest L. Geisinger.

Opinion by Judge GRAHAM.

Defendants, Mt. Princeton Trout Club, Inc. (MPTC), Lisa Riegel, Robert F. Delaney, and Forest L. Geisinger, appeal the entry of judgment in favor of plaintiffs, Sam O. Colt and Richard Winternitz, after a bench trial on their derivative claim seeking dissolution of MPTC and a receivership. We affirm.

MPTC, a closely held corporation, was formed in 1965 to own land and water rights in Chaffee County and to provide fishing and other recreational benefits to its shareholders. MPTC's articles of incorporation provide for a panoply of other purposes, including future sale of the corporation's land.

MPTC's authorized capital consists of eight shares of a single class of common stock of $100 par value with full voting rights. Shares issued are nonassessable and subject to such reasonable transfer restrictions as may be imposed by the board of directors, although none have been imposed. There are no preemptive rights, and cumulative voting is prohibited. There are no by-laws.

Colt and Robert A. Green were original shareholders, and Winternitz bought his share in 1977. The current eight shareholders of MPTC are Delaney, Colt, Geisinger, Winternitz, James B. Isaac, Rosalie Bittner, Riegel (Green's daughter), and Gordon & Gordon. Defendants Delaney and Geisinger are MPTC's president and secretary, in addition to serving as directors and officers of another company owned by Green.

Under the articles of incorporation, the shareholders are the directors of MPTC. However, a recent biennial report filed with the secretary of state was signed by Green, purportedly as the president of MPTC, and lists Green, Delaney, and Geisinger as directors.

Although Green ceased owning shares in 1996, he acquired five proxies by purchasing shares and then reselling them under written agreements that allowed him to retain voting rights to those shares. Green, who sold his own share but retained the voting rights, votes the shares of Riegel, Bittner, Delaney, Winternitz, and Isaac. Colt, Geisinger, and Gordon & Gordon vote their own shares.

In 1998, a resolution of the corporation was adopted that assessed each share an annual amount of $1,300 to pay 12.5% of the total for property taxes, physical maintenance of the property, and the cost of restocking the lake with fish. Some of the shareholders paid their assessments on time; others did not. When there was insufficient money in MPTC's account, property taxes were not timely paid, and the resultant penalties were assessed equally among the shareholders.

Also in 1998, Green mistakenly informed the shareholders that his company accidentally had taken water rights away from MPTC. According to plaintiffs, this information prompted them to investigate and ultimately assert their claims.

In 2000, plaintiffs brought a derivative claim against, as relevant here, (1) the corporation for dissolution and receivership under § 7–114–301(2)(b), C.R.S.2002, for illegal, oppressive, and fraudulent activities and corporate waste; and (2) Green for an accounting and damages. Plaintiffs alleged that Green violated his duties to the corporation by failing to account to the shareholders for the assets and finances of MPTC and that he made distributions to himself in violation of § 7–108–403, C.R.S.2002, for the amount of which he was personally liable to the corporation.

The trial court found: (1) the officers of MPTC failed to file federal tax returns; (2)

the officers and directors failed to collect, in a timely fashion, shareholder assessments to the detriment of MPTC; (3) leases and contracts were entered into without notice to the shareholders and without a formal meeting of the officers, directors, or shareholders; (4) funds of the corporation were not properly accounted for; (5) minutes of corporate meetings inexplicably were missing or withheld from shareholders; (6) an officer of the corporation entered into agreements listing corporate property for sale without authorization or resolution of the corporation; and (7) there existed a "consistent undercurrent of dealing corporate interests without notice to the shareholders and all directors."

The trial court concluded that MPTC had breached its fiduciary duty to all its shareholders and had acted in an oppressive manner. The trial court thus ordered dissolution of the corporation and appointed a receiver. The court did not enter judgment against Green, and plaintiffs do not appeal that decision.

## I.

MPTC first contends that, although plaintiffs did not assert a claim for breach of fiduciary duty, the trial court nevertheless erroneously concluded that a breach of fiduciary duty amounted to per se oppression and justified dissolution under § 7–114–301(2)(b). We agree with the trial court that conduct constituting breach of fiduciary duty can also amount to oppression.

A corporation may be dissolved judicially in a proceeding brought by a shareholder if "[t]he directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent." Section 7–114–301(2)(b).

■ The definition of oppressive conduct is intended to be broad and flexible. "In the context of a close corporation, oppressive conduct of those in control is closely related to breach of the fiduciary duty owed to minority shareholders." *Polk v. Hergert Land & Cattle Co.,* 5 P.3d 402, 404–05 (Colo. App.2000). Breach of fiduciary duty may be evidence of oppressive conduct that could justify the judicial dissolution of a corpora-

tion. *Polk v. Hergert Land & Cattle Co., supra.*

Although the General Assembly has not defined the term "oppressive" for the purposes of § 7–114–301(2)(b), the division in *Polk* held that, for the purposes of this statute, oppressive conduct is generally defined as:

> [B]urdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of the company to the prejudice of some of its members; or a ... departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely.

*Polk v. Hergert Land & Cattle Co., supra,* 5 P.3d at 404 (quoting *Jorgensen v. Water Works, Inc.,* 218 Wis.2d 761, 582 N.W.2d 98, 107 (Wis.Ct.App.1998)). Here, in support of its dissolution order, the court specifically found that "MPTC ... breached its fiduciary duty to all of its shareholders. It has acted in an oppressive manner."

Contrary to MPTC's contention, the court did not state that the breach of fiduciary duty was the exclusive basis for finding oppression. The judgment reflects the holding announced in *Polk* that, in a closely held corporation, oppressive conduct is often related to a breach of fiduciary duty, and evidence of a breach of fiduciary duty may be considered as evidence of oppressive conduct.

■ The court did not necessarily limit its finding of oppression to breaches of fiduciary duty because it also determined as a general matter that "there has been a consistent undercurrent of dealing corporate interests without notice to the shareholders and all directors." Self-dealing and failure to comply with rules of corporate governance include, of necessity, elements of unlawful conduct that are not exclusively proscribed by duties of loyalty and good faith.

■ Here, the record amply supports the trial court's finding, which we will not disturb on appeal absent an abuse of discretion. *See E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18 (Colo.2000).

The record establishes that Green opened the corporate checking account in his own name rather than in the corporation's name and was the sole signatory. Green failed to advise the shareholders about offers from potential purchasers and did not actively pursue these offers. Green reserved an option in one sales contract to buy back five acres for $1000 and did not disclose this self-dealing because, "[i]f the group got 3.5 million ... anything I did, took after that with the buyer, was between me and the buyer." Furthermore, Green frequently claimed he had the right to vote the majority of the shares even though he owned no shares. Although the record is not particularly clear regarding the status or validity of proxies held by Green, it appears that the shareholders acknowledged Green's voting power.

These acts and those described in part II of this opinion, might be properly characterized as illegal, oppressive, or fraudulent. That they also amount to breaches of fiduciary duty does not undermine the justification for dissolution.

We therefore conclude that for reasons enunciated by the trial court and clearly established in the record, the court did not adopt a per se rule that breach of fiduciary duty constitutes oppression. As discussed in part II, the facts on which it relied established the showing necessary to warrant dissolution under § 7–114–301(2)(b).

## II.

MPTC next contends that the evidence was insufficient as a matter of law to support the trial court's findings that it acted in an oppressive manner so as to justify dissolution of the corporation. We disagree.

Findings of fact are generally reviewed under a clear error or abuse of discretion standard, and conclusions of law are generally reviewed de novo. *E–470 Pub. Highway Auth. v. 455 Co., supra.* Whether a breach of a fiduciary duty has occurred is a question of fact and, thus, is a matter for the trial court to resolve. *Rupert v. Clayton Brokerage Co. of St. Louis, Inc.,* 737 P.2d 1106 (Colo.1987).

We review the trial court's resolution of conflicting evidence under a highly deferential standard. Determinations of the credibility of witnesses and the weight to be afforded the evidence are issues within the sound discretion of the trial court as the trier of fact. We must accept its findings on review unless they are so clearly erroneous as not to find support in the record. *Bainbridge, Inc. v. Bd. of County Comm'rs,* 53 P.3d 646 (Colo.App.2001).

■ Assessing whether shareholder oppression exists requires consideration of the reasonable expectations of minority shareholders, and as previously mentioned, particularly in the case of closely held corporations, we may look at breaches of fiduciary duty to measure the type and degree of oppressive conduct. *See Polk v. Hergert Land & Cattle Co., supra.*

■ The officers, directors, and controlling shareholders of a corporation have a fiduciary duty to act in good faith and in a manner they reasonably believe to be in the best interests of the corporation and all its shareholders. *Michaelson v. Michaelson,* 939 P.2d 835 (Colo.1997).

■ In a closely held corporation, the relationship between directors and shareholders is akin to a relationship among partners. Directors owe the highest degree of loyalty and trust to the other shareholders, are required to exercise good faith, and may not use their power to harm the other shareholders. *Pueblo Bancorp. v. Lindoe, Inc.,* 37 P.3d 492 (Colo.App.2001), *aff'd,* 63 P.3d 353 (Colo.2003).

■ Reasonable expectations obviously include the expectation that management will follow the law and promote the purpose of the corporation. Other jurisdictions have held that a shareholder who reasonably expects that ownership in the corporation would entitle him or her to a job, a share of corporate earnings, a place in corporate management, or some other form of security, would be oppressed if the majority defeats those expectations and there exists no effective means of salvaging the investment. *In re Kemp & Beatley, Inc.,* 64 N.Y.2d 63, 484 N.Y.S.2d 799, 473 N.E.2d 1173 (1984); *see*

*also Landstrom v. Shaver*, 561 N.W.2d 1 (S.D.1997).

■■■ "[O]ppression should be deemed to arise only when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the [plaintiff's] decision to join the venture." *In re Kemp & Beatley, Inc., supra*, 64 N.Y.2d at 73, 484 N.Y.S.2d 799, 473 N.E.2d at 1179 (quoted in *Polk v. Hergert Land & Cattle Co., supra*, 5 P.3d at 404).

■■■ Evidence presented at trial established that implicit in the formation of MPTC was the idea that the shareholders could pursue their fishing hobby with reasonable and unfettered access to the land and reap the rewards of appreciation when the land was ultimately sold. The shareholders also reasonably could expect that the corporation would be managed in a proper manner for their mutual benefit.

The record includes ample evidence to support the finding that MPTC defeated the reasonable expectations of the shareholders and therefore acted in an oppressive manner.

The evidence is clear that, when shareholder assessments were not collected on time, MPTC was not able to pay its property taxes. Over the past ten years, delinquent interest on property taxes aggregated as high as $10,000.

Leases and contracts also were entered into without notice and without a formal meeting of the officers, directors, or shareholders. The articles of incorporation state that MPTC may not sell, lease, mortgage, or otherwise dispose of "any of the property and assets of the corporation" without a majority vote of the whole board of directors.

In 1974, the then president of MPTC wrote to the shareholders advising them that Geisinger had proposed to lease the lodge on MPTC's property. Although at least two of the shareholders strongly objected to the proposal, Green approved a lease with Geisinger for $100 per month. Geisinger's attorney drafted the lease, which was never reviewed by MPTC's attorney. The renewal of Geisinger's lease from 1994 to 2004 was never approved by the shareholders. It appears that Geisinger continues to lease the lodge for $100 per month, although he actually pays less.

The result of the Geisinger lease is that no shareholder can use the lodge without Geisinger's permission. Winternitz and Delaney learned about the lease when they tried to use the lodge and were told it was leased. Winternitz testified that he was forced to pay Geisinger $40 per month to sublease the lodge in which he had an interest.

It is also undisputed that, although Colt and Geisinger pay MPTC monthly lease payments, MPTC has never filed income tax returns. This rental income obligated the corporation to file income tax returns, and failure to do so could result in civil and criminal penalties.

In accordance with the Colorado Business Corporations Act, the shareholders reasonably could presume, whether or not they were entitled to vote, that they would receive fair value for their shares if there were a sale of all or substantially all of the corporation's property and that they would be informed of the sale. Section 7–113–102, C.R.S.2002. It logically follows that the shareholders reasonably can expect to be informed of all listings and have a right to expect that offers to purchase will be pursued and negotiated in good faith.

It is doubtful that any shareholder reasonably expected MPTC would be controlled by a nonshareholder, who had misrepresented that he was a director, had acquired several irrevocable proxies, and, in the absence of formal bylaws, had the self-declared right to control, directly or indirectly, every aspect of corporate finance and governance.

Here, the primary reason for corporate existence has disappeared. MPTC no longer serves the interests of all the shareholders, and under this and other circumstances enumerated in the record, a sufficient showing was made to justify dissolution.

The judgment is affirmed.

Judge JONES and Judge VOGT concur.