**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BARRY COMBS,

      Plaintiff - Appellant,

    v.

PRICEWATERHOUSECOOPERS
LLP,

      Defendant,

  and

ANN BENNETT,

      Defendant - Appellee.

Nos. 03-1080, 03-1222

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 01-MK-987 (OES))**

---

Thomas J. Kimmell, Zarlengo & Kimmell, LLC, Denver, Colorado, appearing for
Plaintiff-Appellant.

Cindy C. Oliver (Jennifer Clark, with her on the briefs), Rothgerber, Johnson &
Lyons, LLP, Denver, Colorado, appearing for Defendant-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **PORFILIO**[*], and **LUCERO,** Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

Plaintiff-Appellant Barry Combs, a minority shareholder and former employee of Allied Information Solutions, Inc. ("AIS"), alleged six grounds for breach of fiduciary duty against Defendant-Appellee Ann Bennett, the majority shareholder and only other employee of AIS.  After removal to federal court, Ms. Bennett moved for summary judgment arguing, in part, that Mr. Combs must bring his allegations as a derivative action.  The District Court granted Ms. Bennett's motion.  Mr. Combs then filed a motion to amend his complaint to state a derivative action, which the District Court denied as moot.  On appeal, Mr. Combs challenges both rulings.  We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I.  BACKGROUND

AIS is a close corporation organized under Colorado law.  It has never had more than six shareholders.  In 1987, Mr. Combs became a minority shareholder of AIS and began working there.  At all times relevant to this appeal, Ms. Bennett, the majority shareholder of AIS, has been the president, chairman of the

---

[*] The Honorable Robert H. McWilliams, originally assigned to this panel, recused himself after oral argument.

board, and sole other employee of AIS.

In the late summer of 1999, PriceWaterhouse Coopers acquired all the assets of AIS, although AIS remains an extant corporate entity. As part of this transaction, both Ms. Bennett and Mr. Combs became employees of PriceWaterhouse Coopers. Approximately four months after this transaction, PriceWaterhouse Coopers terminated Mr. Combs' employment.

After his discharge, Mr. Combs brought numerous causes of action against both PriceWaterhouse Coopers and Ms. Bennett in Colorado state court, including an age discrimination suit against PriceWaterhouse Coopers under 29 U.S.C. § 621 *et seq*. ("ADEA"). The ADEA claim enabled PriceWaterhouse Coopers and Ms. Bennett to remove the case to federal court, *see* 28 U.S.C. § 1441(c), where the District Court took supplemental jurisdiction over Mr. Combs' numerous state law claims, *see* 28 U.S.C. § 1367(a). Having subsequently reached a settlement agreement with Mr. Combs, PriceWaterhouse Coopers is not before us on appeal. We therefore turn our focus to the claims against Ms. Bennett.

Mr. Combs rested his sole action against Ms. Bennett, breach of fiduciary duty, on six alleged instances of her misconduct. Much of the factual basis for these claims arise out of an August 1999 audit of AIS. Although Mr. Combs invited the other minority shareholders to participate in the audit, they declined, thus leaving him with the entire financial burden of the audit.

In the District Court, Ms. Bennett filed a motion for summary judgment, offering three supporting arguments. First, she contended that Mr. Combs lacked standing to bring these claims in his individual capacity, asserting that he must bring this suit as a derivative action on behalf of the corporation. Second, Ms. Bennett presented a statute of limitations argument. Third, she argued that Mr. Combs could not carry his burden of proof as a matter of law. On January 31, 2003, the District Court, relying solely on Ms. Bennett's first ground, granted summary judgment and discharged all claims against Ms. Bennett. On February 28, 2003, Mr. Combs appealed the summary judgment ruling.

On February 10, 2003, Mr. Combs filed a motion to amend his complaint to state a derivative action. *See* Fed. R. Civ. P. 15(a). On April 14, 2003, based on its previous summary judgment ruling, the District Court denied the motion as moot. Mr. Combs challenges this ruling in a separately filed appeal ("motion to amend appeal"). In September 2003, Ms. Bennett moved to consolidate the two appeals, which was granted. She also moved this Court, pursuant to 10th Cir. R. 27.2(A)(1), to dismiss the motion to amend appeal, arguing that mootness and lack of appellate jurisdiction preclude review of the District Court's decision. We consider this argument, along with the merits of Mr. Combs' appeal, below.

## II. SUMMARY JUDGMENT

Mr. Combs presents two arguments against the necessity of a derivative

-4-

action in this case. First, he asserts that he may sue in his individual capacity because Ms. Bennett "cause[d] him injury as a stockholder, unique to himself and not suffered by the other stockholders." *Nicholson v. Ash*, 800 P.2d 1352, 1357 (Colo. Ct. App. 1990). Second, he urges that, because AIS is a close corporation, filing this suit in a derivative capacity would not further the policies served by the derivative action procedure. Applying Colorado law, we disagree.

A.    Standard of Review

We review the District Court's "grant of summary judgment de novo, applying the same standards used by the district court." *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Byers*, 150 F.3d at 1274.

B.    Standing as a Unique Shareholder

To escape summary judgment on his breach of fiduciary duty claim, Mr. Combs must put forth evidence of the elements of a breach of fiduciary duty,    *see Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. Ct. App. 1993)

(providing elements), and also establish that he has standing, s *ee River Mgmt. Corp. v. Lodge Props. Inc*., 829 P.2d 398, 403 (Colo. Ct. App. 1991).[1] Accordingly, the District Court based the summary judgment order on its finding that Mr. Combs lacked standing as a matter of law.

Mr. Combs contends that he suffered a breach of fiduciary duty from the fact that Ms. Bennett: (1) paid herself a salary in excess of what had been approved by AIS's board of directors; (2) paid for personal expenses out of AIS funds; (3) failed to disclose the pending sale of AIS to the shareholders in a timely manner; (4) pursued business opportunities for herself instead of for AIS; (5) falsely promised him continued employment with PriceWaterhouse Cooper; and (6) negotiated a lucrative salary from PriceWaterhouse for herself without similarly providing for Mr. Combs.

Absent an exception to the general rule, Mr. Combs lacks standing to bring these claims in an individual capacity. Under Colorado law, "a stockholder cannot maintain a personal action against a director or other third party whose action causes harm to the corporation. Generally, it is the corporation, or a

---

[1] "While not binding on this court, decisions by a state's intermediate appellate courts provide evidence of how the state's highest court would rule on the issue, and we can consider them as such." *Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1231 (10th Cir. 2001) (internal quotation omitted). We will not disregard such intermediate rulings "unless [we are] convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

stockholder in a derivative action . . . , who must pursue such a claim."

*Nicholson*, 800 P.2d at 1356. Moreover, Colorado law states expressly that Mr.

Combs' first and second contentions – claiming waste and mismanagement of

corporate assets – must be brought as a derivative action, even in close

corporations having but one minority shareholder. *River Mgmt. Corp.*, 829 P.2d

at 404; *see also O'Malley v. Casey*, 589 P.2d 1388 (Colo. Ct. App. 1979) (filing

of derivative action is proper for claims regarding excessive salaries); *Ireland v.

Wynkoop*, 539 P.2d 1349, 1354, 1357 (Colo. Ct. App. 1975) (same for suits

alleging wrongful use). As to his third contention, although close corporation

"shareholders reasonably can expect to be informed of all listings [in a timely

manner] and have a right to expect that offers to purchase will be pursued and

negotiated in good faith[,]" *Colt v. Mt. Princeton Trout Club, Inc*., 78 P.3d 1115,

1120 (Colo. Ct. App. 2003), such a claim is properly pursued as a derivative

action, *id*. at 1116. Such is also the case with Mr. Combs' fourth contention

regarding self-dealing. *Ireland*, 539 P.2d at 1357. As the District Court noted,

the fifth and sixth grounds, as they allege injuries to Mr. Combs as an employee,

simply fail on the merits as a matter of law. [2]

---

[2]If Mr. Combs were to pursue these harms, he would have to do so strictly in his capacity as an employee, as we explain below. But such a claim would necessarily fail on the merits. "Before there can be a breach of a fiduciary duty, a fiduciary relationship or a confidential relationship must exist." *Turkey Creek,*

(continued...)

Mr. Combs argues that this general prohibition against individual standing does not apply because Ms. Bennett "cause[d] him injury as a stockholder, unique to himself and not suffered by the other stockholders." *Nicholson*, 800 P.2d at 1357. If he can satisfy this exception to the general rule, then Mr. Combs may pursue his fiduciary duty claims in his individual capacity. *Id*.; *see also In re Stat-Tech Int'l Corp* ., 47 F.3d 1054, 1059-60 (10th Cir. 1995) (applying Colorado corporate law).

Mr. Combs offers four reasons why his fiduciary duty claims fall within the *Nicholson* exception: (1) Ms. Bennett's misuse of funds deprived AIS of money to pay him a higher salary; (2) he was the only shareholder to perform an audit; (3) Ms. Bennett's untimely disclosure of the pending sale of AIS inhibited his ability to negotiate a lucrative salary from PriceWaterhouse Coopers; and (4) Ms.

---

[2](...continued)
*LLC v. Rosania*, 953 P.2d 1306, 1312 (Colo. Ct. App. 1998). As such, Mr. Combs cannot bring this suit solely in his capacity as an employee because, while an employee normally owes fiduciary duties to his employer, employers do not generally owe fiduciary duties to employees under Colorado law . *See Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486 (Colo. 1989) (employee owes employer duty of loyalty); *Equitex, Inc. v. Ungar*, 60 P.3d 746, 752 (Colo. Ct. App. 2002) ("fiduciary duties are not mutual"); *Bithell*, 762 F.2d at 714 (corporation does not owe independent contractor fiduciary duties); *Vitale v. Steinberg*, 764 N.Y.S.2d 236, 237 (N.Y. App. Div. 2003) ("An employer-employee relationship providing for the division of profits will not give rise to a fiduciary obligation on the part of the employer absent an agreement to also share losses."). We can find, and Mr. Combs cites, no rationale for finding that Ms. Bennett owes him fiduciary duties in his capacity as an employee of AIS.

Bennett's promise of continued employment with PriceWaterhouse Coopers affected him disproportionately.

As the District Court noted, Mr. Combs' first, third, and fourth claims of "uniqueness" are injuries in his status as an employee, not a stockholder. As such, the District Court held that they failed to establish a unique injury to Mr. Combs in his status as a shareholder. Citing many non-Colorado cases, Mr. Combs argues on appeal that this distinction between the status as a shareholder and status as an employee is not meaningful in the close corporation context because "[t]he denial of employment to the minority [shareholder] at the hands of the majority is especially pernicious in some instances. A guaranty of employment with the corporation may have been one of the basic reasons why a minority owner invested capital in the firm." *Wilkes v. Springside Nursing Home, Inc.*, 353 N.E.2d 657, 662 (Mass. 1976) (internal quotations omitted).

While some states have adopted the approach advocated by Mr. Combs and permitted suits by employee/shareholders against their employer-close corporations, we find that Colorado has not. Colorado has refused to treat plaintiffs in a hybrid capacity (i.e., shareholder/creditor or shareholder/independent contractor). Rather, the Colorado courts carefully distinguish the capacities in which a plaintiff brings a claim. For instance, the Colorado Court of Appeals in *Nicholson* carefully distinguished between the

plaintiff's capacity as creditor of the corporation and his capacity as stockholder in determining his standing to sue as an individual.[3]  800 P.2d at 1356-57.  The court did not allow plaintiff to bring traditionally derivative claims in his individual capacity based upon a hybrid status of shareholder/creditor.  *Id*.  The Colorado Court of Appeals took a similar course in *Bithell v. Western Care Corp.*, 762 P.2d 708, 714 (Colo. Ct. App. 1988).  There the court carefully distinguished plaintiff's different statuses in relation to the corporation and rejected a minority stockholder's, who was also an independent contractor, claim that he had standing to bring a breach of fiduciary duty claim in his hybrid capacity as a stockholder/independent contractor.  *Id*.[4]  In other words, when a shareholder does not possess the right to bring a suit in his individual capacity as a shareholder against the corporation, as is the case here, he does not gain that right merely because he also serves the corporation in another capacity.  In short, Mr. Combs does not suffer a unique injury as a shareholder, thus granting him individual standing, based upon his hybrid status as a stockholder/employee.  *See River*

---

[3] Even in *Colt*, where the Court of Appeals stated that other jurisdictions consider the thwarting of plaintiff's reasonable expectation in employment oppressive when it arises from a minority interest in a close corporation, the case was brought as a derivative action—not in an individual capacity.  78 P.3d at 1117, 1119-20.

[4] Although the corporation at issue in *Bithell* was a Utah corporation, the Court of Appeals relied exclusively on Colorado case law in this analysis. *Bithell*, 762 P.2d at 714.  Thus, we find *Bithell*, at least in this section, to be an application of Colorado law.

*Mgmt. Corp.*, 829 P.2d at 403 (distinguishing between suing in an individual capacity and a derivative capacity for breach of fiduciary duty).

As for the second claim, conducting an audit is simply not an " *injury* [to Mr. Combs] as a stockholder," *Nicholson*, 800 P.2d at 1357 (emphasis added), rather it is a *right* that is available to all shareholders, *see* Colo. Rev. Stat. Ann. § 7-116-102(2)-(3) (West 2003) (shareholder's right to review accounting records). Thus, he cannot satisfy the *Nicholson* test for individual standing.

C.     Adoption of *Donahue* in Colorado

Next, Mr. Combs urges us to predict that the Colorado Supreme Court will adopt the holding of *Donahue v. Rodd Electrotype Co. of New England, Inc.*, 328 N.E.2d 505 (Mass. 1975). The *Donahue* decision brought about two innovations in the law of close corporations relevant to this case. First, the court held that shareholders in a close corporation owe each other duties as if they are partners:

> Because of the fundamental resemblance of the close corporation to the partnership, the trust and confidence which are essential to this scale and manner of enterprise, and the inherent danger to minority interests in the close corporation, we hold that stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another. *Id.* at 515 (notes omitted).

The Colorado courts have adopted this rule. *See Van Schaack Holdings v. Van Schaack*, 867 P.2d 892, 897 (Colo. 1994) (en banc) ("[I]t is widely recognized that the fiduciary duty imposed on corporate directors and officers dealing with

minority shareholders is enhanced in the context of closed corporations."); *Pueblo Bancorporation v. Lindoe, Inc.*, 37 P.3d 492, 499 (Colo. Ct. App. 2001), *aff'd* 63 P.3d 353 (Colo. 2003) ("In a closely held corporation, the relationship between directors and shareholders is treated like a relationship between partners."); *Colt*, 78 P.3d at 1119 (same). The existence of heightened fiduciary duties, however, does not on its own create individual standing.

The *Donahue* court's second innovation granted individual standing to shareholders in close corporations. *Donahue*, 328 N.E.2d at 508 n.4 ("We treat that bill of complaint . . . as presenting a proper cause of suit in the personal right of the plaintiff."). Many jurisdictions have adopted the *Donahue* court's approach to standing either in whole or with qualifications. [5] Nonetheless, many others have rejected the *Donahue* approach to standing, often adopting a rule similar to that espoused by the Colorado Court of Appeals in *Nicholson*.[6] The Colorado

---

[5] *See, e.g., Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248, 259 (N.C. Ct. App. 2000); *Brown v. Brown*, 731 A.2d 1212, 1217 (N.J. Super. Ct. App. Div. 1999); *Richards v. Bryan*, 879 P.2d 638, 648 (Kan. Ct. App. 1994); *Schumacher v. Schumacher*, 469 N.W.2d 793, 798-799 (N.D. 1991); *W&W Equipment Co. v. Mink*, 568 N.E.2d 564, 571 (Ind. Ct. App. 1991); *Crosby v. Beam*, 548 N.E.2d 217, 221 (Ohio 1989); *Thomas v. Dickson*, 301 S.E.2d 49, 51 (Ga. 1983); *see also* American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 7.01(d) (1994); *Warden v. McLelland*, 288 F.3d 105, 112-113 (3d Cir. 2002) (predicting that the Pennsylvania Supreme Court would follow ALI approach).

[6] *See, e.g., Brancaleone v. Mesagna*, 736 N.Y.S.2d 685, 687 (N.Y. App. Div. 2002); *Small v. Sussman*, 713 N.E.2d 1216, 1219-1220 (Ill. App. Ct. 1999),

(continued...)

-12-

Supreme Court has yet to explicitly reject or accept the *Donahue* approach to standing.

Nevertheless, because Colorado courts have recently adopted the *Donahue* approach to the scope of fiduciary duties between shareholders in a close partnership— *see Van Schaack*, 867 P.2d at 897; *Pueblo Bancorporation*, 37 P.3d at 498; *Colt*, 78 P.3d at 1119—the standing issue is ripe for determination by the Colorado Supreme Court. At oral argument, we asked Mr. Combs' counsel if he would like the question certified to the Colorado Supreme Court. He stated he would prefer that the question not be certified. Ms. Bennett's counsel also did not wish to certify the question.

Instead, Mr. Combs' counsel urges us to predict that the Colorado Supreme Court would adopt the *Donahue* standing rule. As we noted above, the general trend in Colorado has been that corporate claims must be pursued in a derivative suit, even in close corporations. *River Mgmt. Corp.*, 829 P.2d at 404; *see also In re Stat-Tech Int'l Corp.*, 47 F.3d at 1059-60 (finding, under Colorado law, that

---

[6](...continued)
*appeal denied* 723 N.E.2d 1169 (Ill. 1999); *Nelson v. Anderson,* 84 Cal. Rptr. 2d 753, 763 (Cal. Ct. App. 1999); *Wessin v. Archives Corp.*, 592 N.W.2d 460, 467 (Minn. 1999); *Hames v. Cravens*, 966 S.W.2d 244, 246-47 (Ark. 1998); *Landstrom v. Shaver*, 561 N.W.2d 1, 13-14 (S.D. 1997); *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990); *see also Brock v. Baskin-Robbins USA Co.*, 113 F. Supp. 2d 1078, 1092 (E.D. Tex. 2000) (noting that Alabama, Texas, and Louisiana do not permit shareholders to sue individually for injuries to a corporation).

corporate claims generally must be pursued derivatively); *Nicholson*, 800 P.2d at 1357 (holding that the only exception to the need for derivative action arises where the defendant "cause[s plaintiff an] injury as a stockholder, unique to himself and not suffered by the other stockholders."). Although these cases were decided by the Court of Appeals, we have no "persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940). Given the split of authority on this issue among the states, *see supra* notes 4 and 5, and the special importance of the control of corporate governance in state law, we refuse to predict that the Colorado Supreme Court will part ways with the Colorado Court of Appeals, thereby creating a sea change in Colorado corporate law, on the issue of close corporation shareholders' standing to sue. Therefore, we find that Mr. Combs lacks individual standing to sue Ms. Bennett for breach of fiduciary duty.

## II. MOTION TO AMEND

Two issues confront us on the motion to amend appeal. First, Ms. Bennett contends that mootness and lack of appellate jurisdiction mandate that we dismiss Mr. Combs' motion to amend appeal. Second, Mr. Combs urges that the District Court abused its discretion by denying his motion. We start with Ms. Bennett's contentions.

A.     <u>Motion to Dismiss</u>

-14-

A motion to dismiss that is originally filed in this Court is proper when the case is moot or when we lack jurisdiction. *See* 10th Cir. R. 27.2(A)(1). Ms. Bennett asserts the presence of both circumstances. We disagree.

Ms. Bennett first contends that, because the District Court determined that the motion to amend was moot, we must also dismiss the appeal of that determination for mootness. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies."). Nevertheless, we have jurisdiction to determine our own jurisdiction. *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000). As such, the District Court's conclusion that Mr. Combs' Fed. R. Civ. P. 15(a) motion was moot when filed below is not grounds for summary dismissal in this Court, because we have the requisite jurisdictional font to determine for ourselves whether the motion below was, in fact, moot. Thus, Ms. Bennett's mootness motion presents the same question as an inquiry into the merits of the appeal itself (i.e., did the District Court properly dismiss the motion to amend as moot). We discuss that issue below.

Second, Ms. Bennett urges that we lack appellate jurisdiction because the order denying leave to amend is not a final decision. *See* 28 U.S.C. § 1291 (generally limiting the jurisdiction of the courts of appeal to final decisions from

-15-

the district courts). We agree with Ms. Bennett that an order denying leave to amend is not, in most cases, a final decision, as a final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). It does not follow, however, that courts of appeals lack jurisdiction to review a denial of leave to amend that is filed after the district court has issued a final decision and is appealed in conjunction with the final decision. *See, e.g., Copier v. Smith & Wesson Corp.*, 138 F.3d 833, 834 (10th Cir. 1998) ("Appellant . . . appeals from the district court's final order denying her motion to amend and confirming dismissal of her complaint.") (note omitted). Thus, if Mr. Combs had presented his motion to amend argument in the same appeal as his summary judgment argument, we would undoubtedly have jurisdiction.

That is not exactly the case at hand. Mr. Combs filed his summary judgment appeal first; he then separately appealed the denial of his motion to amend. Although filing two separate appeals may affect our jurisdiction in a different case; we do not find on the facts before us that Mr. Combs' filing of two separate appeals differs meaningfully from a single appeal of a final decision that includes a review of a motion to amend as an additional issue. Therefore, we hold that we have jurisdiction to hear Mr. Combs' motion to amend appeal.

B.    Denial of Leave to Amend

After entering final judgment against Mr. Combs, the District Court dismissed Mr. Combs' motion for leave to amend his complaint as moot. Mr. Combs contends this amounts to reversible error. We disagree.

1.    *Standard of Review*

The parties contest the applicable standard of review. In his opening brief, Mr. Combs pushes for de novo review by citing *Foster v. Allied Signal, Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002) and *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). *Foster* and *Cooperman*, however, hold that the de novo standard applies to our review of summary judgment orders, not denials of motions to amend. Ms. Bennett argues for abuse of discretion review, citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court") and *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (same). In reply, Mr. Combs reasserts that we apply de novo review, this time relying upon *Watson ex. rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) ("This court reviews de novo a district court's refusal to grant leave to amend a complaint based on the court's conclusion that the amendment would be futile."). Although Mr. Combs relies exclusively on *Watson* in his renewed standard of review argument, he fails to argue that the District Court based its decision to deny leave to amend on futility.        Therefore,

we review for abuse of discretion. *Pallottino*, 31 F.3d at 1027.

2.     *Merits*

The District Court denied Mr. Combs' motion to grant leave to amend, stating only that it was moot. Mr. Combs contends that the District Court abused its discretion by failing to offer reasons for its denial because the rationale for the denial is not apparent from the record. *See id.* He misapplies this rule.

After a district court enters a final judgment, as occurred here, it may not entertain motions for leave to amend unless the court first sets aside or vacates the judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b). *Seymour v. Thornton*, 79 F.3d 980, 987 (10th Cir. 1996). Mr. Combs filed neither a Rule 59(e) nor a Rule 60(b) motion. This failure to file the necessary prerequisite motion mooted his motion to amend. As such, the District Court provided all the explanation necessary to justify its ruling.

Although he did not style his Rule 15(a) motion to amend as a motion to set aside or vacate, Mr. Combs counters that the District Court had "the discretionary power to treat [his] Rule 15(a) motion seeking to amend a complaint as including a Rule 59(e) motion to amend judgment or a Rule 60(b) motion for relief from judgment." 3 Moore's Federal Practice § 15.12[2] & n.19 (3d ed. 2004) (listing cases). Mr. Combs, however, offers no reason for us to conclude that the District Court abused its discretion by failing to morph his Rule 15(a) motion into a Rule

-18-

59(e) or 60(b). Indeed, our review of relevant case law and the record assures us that the District Court made the proper ruling.

In *Pallottino*, we explained that granting leave to amend after entry of summary judgment is disfavored:

> A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but equal attention should be given to the proposition that there must be an end finally to a particular litigation. . . . Much of the value of summary judgment procedure in the cases for which it is appropriate . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back along thereafter and fight on the basis of some other theory. 31 F.3d at 1027 (internal citations and quotations omitted).

This wariness is heightened when the losing party seeks the amendment many months after his initial filing, the amendment is not based on new evidence, and the amendment is merely the presentation of an alternate legal theory that was readily available prior to the entry of summary judgment. *Id.*

Here, Mr. Combs waited over fifteen months from the filing of his first amended complaint before seeking leave to amend; and he offers no new evidence as grounds for the amendment. Rather, he lost on the individual capacity theory and sought to amend his complaint to use a derivative action as an alternative. Given this record, we find that the District Court did not abuse its discretion in failing sua sponte to treat Mr. Combs' Rule 15(a) motion as a Rule 59(e) or 60(b)

-19-

motion.  Therefore, the motion for leave to amend was properly denied as moot.

## IV.  CONCLUSION

We hold that Mr. Combs lacks individual standing to bring suit for breach of fiduciary duty and AFFIRM the District Court's grant of summary judgment in favor of Ms. Bennett.  We also have jurisdiction to hear Mr. Combs' appeal of the District Court's denial for leave to amend and AFFIRM the court's order.