**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 20, 2005**

**TENTH CIRCUIT**

**Clerk of Court**

---

LETICIA SMEDLEY,

      Plaintiff - Appellant,

v.

CORRECTIONS CORPORATION OF
AMERICA,

      Defendant - Appellee,

ROY JOHNSON; CITY OF TULSA,
OKLAHOMA; JANE DOE, Sued as
Jane Doe Number One, Jane Doe
Number Two;

      Defendants.

No. 04-5113
(D.C. No. 02-CV-905-E)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **MURPHY**, Circuit Judges and **ARMIJO**,[**] District Judge.

Plaintiff-Appellant Leticia Smedley ("Smedley") filed suit alleging

generally that she had been unlawfully arrested and deprived of her civil rights

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable M. Christina Armijo, District Judge, United States District
Court of New Mexico, sitting by designation.

while incarcerated. She appeals from the district court's grant of Defendant-Appellee Corrections Corporation of America's ("CCA") motion for summary judgment. Ms. Smedley also appeals the district court's denial of her post-judgment motion to amend her complaint.

Ms. Smedley argues that the district court erred because (1) she did not waive her argument that her claim under 42 U.S.C. § 1983 was based on the "inadequate training, supervision, or policy" of CCA and its employees, (2) the rule announced by the Supreme Court in <u>Monell v. Dep't of Social Services of New York</u>, 436 U.S. 658 (1978), which held that a state actor cannot be held vicariously liable for claims brought under 42 U.S.C. § 1983, does not apply to a private corporation that has contracted to perform a traditional government function, and (3) that her post-judgment Rule 15(a), Fed. R. Civ. P., motion to amend her complaint to include state tort claims should have been granted. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

<u>Background</u>

On November 15, 2001, Ms. Smedley worked all day from her home. She began working early that morning, and did not finish until approximately 1:30 a.m. on November 16th. Aplt. Br. at 5. Throughout the course of the day, Ms. Smedley ingested her prescription medications as directed by her physician, as

well as some coffee, tea, or coke.  Id.  In her deposition, Ms. Smedley denied that she imbibed any alcoholic beverages or took any illegal drugs.  Aplt. App. at 57-58.  Upon completion of her day's work, Ms. Smedley left her home in order to find something to eat.  Ms. Smedley, who was previously diagnosed as hypoglycemic, needed food in order to maintain her blood glucose level, which she perceived to be low early in the morning of the 16th.  Id.

While Ms. Smedley was searching for a restaurant, she was stopped by Officer Roy Johnson ("Johnson"), a Tulsa police officer.  Officer Johnson, thinking Ms. Smedley was intoxicated, administered a breathalyzer test.  After an apparently negative result, Ms. Smedley was taken to the Saint Francis Hospital for further testing.  Aplt. App. at 64-65.  The medical personnel at Saint Francis determined that Ms. Smedley had a history of hypoglycemia.  Ms. Smedley's blood glucose level was measured at 57 mg/dL.  Aplt. App. at 64.  According to the hospital staff, symptoms of hypoglycemia "usually develop if the blood glucose is less than 50 mg/dL."  Id.  Thereafter, Ms. Smedley was transported and booked into the David L. Moss Criminal Justice Center ("Moss"), a CCA facility.  Aplt. App. at 30.

According to Ms. Smedley, she was subjected to a pattern of abuse by CCA prison officials.  Aplt. Br. at 16.  She was handcuffed roughly and her feet were kicked apart during a pat down.  Id. at 7.  Upon a request for medical attention,

she was told to "[s]it down white bitch." Id. at 8. On two separate occasions a nurse took a reading of Ms. Smedley's blood glucose level, and even though she found it to be lower than appropriate, the nurse did not suggest to the prison official that Ms. Smedley needed food or water. Id. at 8-9. Ms. Smedley further contends that a CCA official "came running after her at full speed" and picked her "off the ground and . . . dragged [her] approximately 20 feet." Id. at 9. Thereafter, a CCA official then threw Ms. Smedley to the floor, grabbed her by the "right shoulder and right arm and hair," and proceeded to drag Ms. Smedley into an adjacent holding area, at which point she began to kick Ms. Smedley and yelled some permutation of "get the f. . . out of my way you stupid white bitch." Id. at 9-10. Ms. Smedley was thrown up against the cell wall, sustaining scratches and bruises to her face. Id. at 10. For the remainder of her stay in the holding cell, Ms. Smedley was denied food and medical treatment by CCA officials. She also claims that CCA personnel intentionally delayed her release from Morris. Id. at 11. Though these allegations are troubling, the case is resolved on purely legal grounds.

## Discussion

On appeal, Ms. Smedley advances three arguments: (1) she did not waive her argument that her claim under 42 U.S.C. § 1983 was based on the "inadequate

training, supervision, or policy" of CCA and its employees, (2) CCA can be held vicariously liable under 42 U.S.C. § 1983; and (3) her post-judgment motion to amend her complaint to include state tort claims should have been granted. We address each argument in turn.

A.    Inadequate Training, Supervision, or Policy

According to Ms. Smedley, she has properly preserved her inadequate training argument because she argued the issue before the district court at the summary judgment hearing. Aplt. Reply Br. at 7. CCA, on the other hand, argues that because Ms. Smedley (1) never raised or briefed the issue before the district court, (2) only vaguely referenced CCA's alleged "pretty poor policy" and "pretty poor supervision" during argument at the summary judgment hearing, and (3) did not identify any offending policy, custom, or practice on the part of CCA, that this argument should be deemed waived. Aplee. Br. at 15.

In her brief in opposition to CCA's motion for summary judgment, Ms. Smedley's primary argument was that Monell did not apply to an action involving a private corrections facility, and that there was ample evidence that her civil rights were violated. Aplt. App. at 50-54. Thus, the inadequate training and supervision claim was not raised below. We have repeatedly held that absent "extraordinary circumstances," we do not consider arguments raised for the first time on appeal. Hill v. Kansas Gas Serv. Co., 323 F.3d 858, 866 (10th Cir. 2003).

B.    Monell Doctrine

Ms. Smedley argues that the Monell doctrine should not apply to private corporations who perform government functions. Aplt. Br. at 32-43. CCA, on the other hand, argues that Monell does apply, and that as such, CCA cannot be held vicariously liable for the tortious acts of its employees. Aplee. Br. at 10. The district court granted CCA's motion for summary judgment on the issue. We review the grant of summary judgment de novo. Wolf v. Prudential Ins. Co. of Amer., 50 F.3d 793, 796 (10th Cir. 1995).

In Monell, the Supreme Court held that a municipality cannot be held liable under 42 U.S.C. § 1983 merely on account of the unauthorized acts of its agents. Monell, 436 U.S. 658, 691 (1978). While it is quite clear that Monell itself applied to municipal governments and not private entities acting under color of state law, it is now well settled that Monell also extends to private defendants sued under § 1983. See e.g., Dubbs v. Head Start, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003) (collecting circuit court cases). As such, a private actor such as CCA "cannot be held liable *solely* because it employs a tortfeasor - or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691 (emphasis in original). Therefore, in order to hold CCA liable for the alleged tortious acts of its agents, Ms. Smedley must show that CCA directly caused the constitutional violation by instituting an "official municipal

policy of some nature," id., that was the "direct cause" or "moving force" behind the constitutional violations. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-85 (1986); City of Oklahoma City v. Tuttle, 471 U.S. 808, 820 (1985).

The district court found, despite Ms. Smedley's contention that her allegations were sufficient to raise a policy of "looking away," that such was not the case. The court correctly concluded that no such allegation had been made and no policy was ever identified. Aplt. App. at 13. We agree. Nothing in the complaint, the brief in opposition to summary judgment, or the brief on appeal, adequately alleges or provides evidence of such a policy. Id. No evidence suggests that CCA was or should have been aware of the problems confronted by Ms. Smedley.

As we understand it, Ms. Smedley appears to argue that because corporations could be held liable under 42 U.S.C. § 1983 both before and after Monell, it "simply defies logic to state that the traditional liability that existed for corporations prior to" Monell "should somehow be abrogated as a result of the Supreme Court extending liability under § 1983 to municipalities where no such liability existed before." Aplt. Br. at 37. We disagree. The Tenth Circuit, along with many of our sister circuits, has rejected vicarious liability in a § 1983 case for private actors based upon Monell. Dubbs, 336 F.3d at 1216. As Ms. Smedley has failed to provide any evidence that CCA had an official policy that was the

- 7 -

"direct cause" of her alleged injuries, summary judgment for CCA was appropriate.

C.    Denial of Post-Judgment Motion to Amend

Ms. Smedley also argues that the district court erred in denying her post-judgment Rule 15(a) motion to amend her complaint to include two state tort claims.  Aplt. Br. at 43-50.  CCA argues, on the other hand, that the district court did not err in denying the motion because Ms. Smedley's motion to amend came approximately six months after an already-extended filing deadline.  Aplee. Br. at 24.  The district court also denied Ms. Smedley's Rule 59(e) motion to alter or amend the judgment.  That ruling has not been appealed and is not before us.

While we review a district court's denial of a Rule 15(a) motion to amend a complaint for an abuse of discretion, The Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084,1086-87 (10th Cir. 2005), it is well settled that once judgment has been entered, "the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Rule 59(e) or Rule 60(b)."  Id. at 1087 (internal citations and quotations omitted).  Furthermore, even though Rule 15(a) states that "leave [to amend] shall be freely granted when justice so requires," it is also true that this presumption is inverted where a plaintiff seeks to amend her complaint *after* judgment has been rendered.  Id.

Therefore, on appeal, Ms. Smedley is required to argue that the denial of

her Rule 59(e) motion was error as a prerequisite to her contention that the denial of her Rule 15(a) motion was error.  Id.  As such, Ms. Smedley's waiver of any Rule 59(e) argument precludes review as it renders her Rule 15(a) argument moot. Combs v. Pricewaterhouse Coopers, LLC, 382 F.3d 1196, 1205 (10th Cir. 2004).

In closing, we note that this case highlights the need for counsel's conscientious and careful review of written legal materials prior to court submission.  While this is not a school, and we are not grading papers, hardly a page of material in support of the appeal passed without a spelling or grammatical error – or both.  Our concern is for a persuasive case on behalf of the client, one that can be readily understood by opposing counsel and the court.  A brief that is difficult to comprehend not only consumes more time, but also may be somewhat less than persuasive.  We hope that this serves upon counsel ready notice of the problem and the responsibility to correct it.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge